IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

STEVEN MARTINEZ,

    Petitioner,

v.                                                                                                  Civil Action No. 2:16cv31
                                                                                                 (Judge Bailey)

WARDEN, USP HAZELTON,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Introduction

On April 25, 2016, the *pro se* Petitioner, an inmate at USP Hazelton in Bruceton Mills, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging disciplinary proceedings over an incident that occurred while he was incarcerated at FCC Coleman in Sumterville, Florida. ECF No. 1. Pursuant to a Notice of Deficient Pleading issued by the Clerk of Court, on May 9, 2016, Petitioner paid the $5.00 filing fee. ECF No. 5.

On July 20, 2016, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 8. After being granted an extension of time, on September 7, 2016, Respondent filed a Motion to Dismiss the Petition or Alternatively, Motion for Summary Judgment. ECF No. 13. On September 12, 2001, the Court entered a Roseboro Notice, informing Petitioner of his right to respond to the Respondent's dispositive motion. ECF No. 15. After being granted an extension of time, on September 30, 2016, Petitioner filed his response in opposition. ECF No. 20. On October 4, 2016, the Respondent filed a Reply. ECF No. 22.

This matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II. Background

### A. Conviction and Sentence

On June 27, 1995, in the Southern District of New York, Petitioner and two co-defendants were charged in a four-count superseding indictment. Petitioner was charged in Count 1s with Conspiracy to Commit Murder, in violation of 18 U.S.C. § 1117; in Count 2s with Murder, in violation of 18 U.S.C. §§ 1114, 1111; in Count 3s with Larceny and Theft, Postal, in violation of 18 U.S.C. § 371; and in Count 4s with Robbery, Postal, in violation of 18 U.S.C. § 2114. On February 8, 1996, after a 9-day jury trial in United States District Court for the Southern District of New York, Petitioner was convicted of murder, robbery, and conspiracy to commit murder and robbery. On November 7, 1996, Petitioner was sentenced to life in prison. According to the BOP's online Inmate Locator, Petitioner is now 49 years old.

### B. Prison Disciplinary Proceedings

**Incident Report, November 20, 2015**

On November 20, 2015, Petitioner was charged in an incident report with "assaulting any person," in violation of Prohibited Act Code § 224. ECF No. 1-1 at 8. The reporting officer stated that on November 20, 2015 at 12:45pm,

> I officer Mansukhani went to C-unit to assist with locking down the unit. I noticed a group of inmates going to the ice machine instead of locking down. When [m]yself and officer Archer ordered inmate Martinez, Steven #45757-019 to return to his cell he became verbally aggressive and attempted to throw a punch in my direction. At that time I attempted to place the inmate on the wall he instead turned around to face me and pushed me in the chest several times before myself and officer Archer were able to place him on the ground with the minimal amount of force necessary. Once on the ground the inmate continued his assaultive actions until responding staff assisted me in the application of hand restraints.

ECF No. 14-1 at 17. Per the Bureau of Prisons' ("BOP's") protocol, prison staff conducted an investigation of the charge and the Unit Discipline Committee ("UDC") reviewed the Incident Report and investigation. Id. Due to the severity of the charges, the UDC referred the matter to the Discipline Hearing Officer ("DHO") for a hearing. Id. On November 25, 2015, Petitioner received and signed the Inmate Rights at Discipline Hearing form, which informed him of his rights regarding the DHO hearing, including the right to call witnesses and the right to the assistance of a staff representative. Id. at 21. Petitioner also received a copy of a Notice of Discipline Hearing Before the DHO the same day; on it, Petitioner initially requested the assistance of two staff representatives, "Ms. Rodgers"[1] and "Ms. Schwartz," and signed the document, but then noted below "I request to waive the staff reps above only on Ms. Schwartz" and signed again, below that notation. Id. at 22.

On December 4, 2015, the DHO conducted Petitioner's hearing without a staff representative present. Id. at 24. Afterwards, the DHO found Petitioner guilty of the charge against him. Id. As a result, Petitioner was subjected to the following sanctions:

1) 15 days disciplinary segregation

2) 120 days loss of commissary privileges.

Id. at 25. On December 9, 2015, the DHO "A. Rich" issued his Report, summarizing what had occurred during the hearing. Id. at 24 – 26.

### III. Contentions of the Parties

**A. The Petition**

Petitioner's court-approved form petition is nearly blank and was not accompanied by a memorandum in support. However, attached to it is a copy of a hand-written December 27, 2015

---

[1] The correct spelling of this individual's last name is "Rogers," per her affidavit attached to the Respondent's reply. See ECF No. 22-1.

BP-10, a Regional Administrative Remedy Appeal, in which Petitioner contends that after being recalled back to the FCC Coleman housing unit from the mess hall on November 20, 2015, he went to get ice. ECF No. 1-1 at 4. As he returned, one Officer Mansukhani came running "frantically" toward him, telling him to "get the f—k away from the ice machine," and attempted to "smack" the ice out of Petitioner's hand. Id. Petitioner contends he pulled his hand back and told Mansukhani that he would give it to him, but not to snatch it from him. Id. He contends that Mansukhani cursed at him, while Officer Archer ran up to Petitioner and pushed him. Id. Petitioner contends that ""[o]ut of reaction I pushed back," and then both officers jumped him; while he was on the floor, Mansukhani kicked him several times, once on the forehead. Id. Petitioner asserts that this "can be reviewed on the camera." Id. He contends that there was "no incident that occurred that caused this lockdown" and notes that he did not receive an incident report within 24 hours, nor any explanation from either the Lieutenant or the DHO, as was claimed in the hearing. Id. Petitioner further contends that the incident report "does not reflect what actually happen[ed]" and that he "waived Mrs. Schwartz being present at my D.H.O. hearing." Id. He seeks to have the incident report expunged from his record. Id.

Petitioner also attaches a copy of a November 20, 2015 Disciplinary Hearing Officer Report ("DHO Report") [id. at 5 -7]; a copy of a November 20, 2015 Incident Report [id. at 8]; and a copy of a "Statement of Steven Martinez," dated November 23, 2015. Id. at 9.

Petitioner contends that he filed administrative grievances over his claim, but that his BP-10 was rejected as untimely and a "Central Office (Bp-11) rejection is not a denial. ECF No. 1 at 8.

As relief, Petitioner requests that the incident report be expunged from his record. Id.

**B. Respondent's Motion to Dismiss or Alternatively, Motion for Summary Judgment**

In response to the Petition, Respondent argues that the petition should be dismissed or summary judgment granted in its favor because

1) Petitioner lost no good conduct time ("GCT") as a result of the disciplinary hearing, thus his petition does not challenge the fact or duration of his confinement, and therefore it is not cognizable as a § 2241 petition. ECF No. 14 at 6.

2) Even if Petitioner's claim were cognizable as a habeas petition, Petitioner fails to state a claim upon which relief can be granted because he asserts no grounds for relief [id. at 8]; and

3) even if Petitioner had pled a cognizable habeas claim, his petition is due to be dismissed because he did not exhaust his administrative remedies. Id. at 9.

**C. Petitioner's Response in Opposition**

Petitioner reiterates his arguments and attempts to refute the Respondent's on the same, attaching his own sworn affidavit.

More specifically, Petitioner contends that although he initially wanted both Ms. Rogers and Ms. Schwartz to appear on at the December 4, 2015 disciplinary hearing as his representatives, after requesting that they review the camera footage to verify his claim that he was not at fault, Ms. Schwartz was "unable to attend" the December 4, 2015 hearing. ECF No. 20 at 4. However, he contends that contrary to what the DHO report says, Ms. Rogers *did* attend, and that she verified that the incident report did not reflect what was seen on the November 20, 2015 video tape. Id.

Petitioner asserts that during the incident, while he was "on the ground[,]" Officer Mansukhani kicked him "repeatedly, and once on the forehead." ECF No. 20 at 3. Elsewhere, he asserts that both Archer and Mansukhani used excessive force against him during the November 20, 2015 incident, by "pushing, jumping, and kicking repeatedly in the face when Martinez was not violating any prison rule, and was not acting disruptively," in violation of his Eighth Amendment rights, causing him pain, suffering, physical injury and emotional distress. Id. at 5. In

5

his attached affidavit, he avers that while he was on the floor "Officer Mansukhani repeatedly punched and kicked . . . [him] on the forehead" and that this can be verified by the FCC Coleman video tape. ECF No. 20-1 at 1.

Further, Petitioner contends that on December 11, 2015, he signed the Disciplinary Hearing Report, "which was actually a Notice of Disciplinary Hearing Before the DHO[,] [but that after he] signed the form, DHO Rich wrote above . . . [his] signature . . . ["]I waive staff reps"" to "whitewash the December 4, 2015 disciplinary hearing report" by excluding acknowledgment of Ms. Rogers' presence. ECF No. 20-1 at 2.

He contends that he did exhaust "all appeal remedies," but because he was in transit from January 20, 2016, he could not submit a verification from FCC Coleman staff members to explain why his administrative remedy request was not timely submitted. Id.

## D. Respondent's Reply

Respondent reiterates its request that the petition be dismissed or summary judgment granted in its favor, arguing that

    1) Petitioner's newly articulated claims are not properly raised for the first time in response to Respondent's dispositive motion [ECF No. 22 at 2];

    2) even if Petitioner's new claims were properly raised at this time, they are either not cognizable in a § 2241 petition or they lack merit [id. at 3];

    3) available evidence contradicts Petitioner's new assertion that DHO Rich violated his due process rights by allegedly falsifying the DHO report, because the DHO report accurately reflects that Petitioner waived his right to have a staff member appear on his behalf at the hearing Id. at 4. In support of this, Ms. Rogers, Petitioner's FCC Coleman Unit Manager, has provided an affidavit [attached as ECF No. 22-1] attesting to the fact that she was neither asked to attend, nor did she attend or testify at the December 4, 2015 hearing. ECF No. 22 at 4.

## IV. Standard of Review

6

A. **<u>Motion to Dismiss</u>**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Conley</u>, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Id.</u> (citations omitted), to one that is "plausible on its face," <u>Id.</u> at 570, rather than merely "conceivable." <u>Id.</u> Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson</u>

v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)).

In doing so, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

When a Motion to Dismiss is accompanied by affidavits, exhibits and other documents as in this case, the motion will be construed as a motion for summary judgment. The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for

the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. Analysis

### Failure to Exhaust

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D. Md. 1997). Further, a federal prisoner's administrative remedy is not exhausted where an inmate is expressly instructed to resubmit a deficient submission and he fails to do so. Tucker v. Helbig, No. 8:13-cv-00401, 2013 U.S. Dist. LEXIS 170673, at *4 (D.S.C. Dec. 4, 2013) aff'd, 566 F. App'x 268 (4th Cir. 2014) (per curiam) (unpublished).

Here, Petitioner admits that at the time he filed his §2241 petition on April 25, 2016 that the result of his attempts to present his grievances to the BOP was that his "Regional Appeal (Bp-10) was rejected because [it] was not received within 20 days of filing. [A] Central Office (Bp-11) rejection is not a denial." ECF No. 1 at 8.

Respondent also asserts that Petitioner filed but did not exhaust his administrative remedies regarding his appeal of the disciplinary hearing because the BP-10 was rejected as untimely and never corrected.

In his response in opposition, Petitioner argues that on December 27, 2015, he presented the facts through the prisoner grievance procedure at FCC Coleman to "try and solve the problem" but did not receive a response until sometime after he arrived at USP Hazelton in February 2016. ECF No. 20 at 5. In the affidavit attached to his response in opposition, Petitioner argues that he did exhaust "all appeal remedies," but because he was in transit from January 20, 2016, he could not submit a verification from FCC Coleman staff members to explain why his administrative remedy request was not timely submitted. ECF No. 20-1 at 2.

A review of the record indicates that Petitioner was informed of, and indicated his understanding of the 20-day deadline to appeal his DHO Report well in advance of the report's being issued. On November 25, 2015, he signed the "Inmate Rights at Discipline Hearing," acknowledging that he had been advised of his right to appeal the DHO's decision via the Administrative Remedy Procedure to the Regional Director, and that that had to be done within 20 days of notice of the DHO's decision and disposition. ECF No. 14-1, ¶ 7 at 21. Further, when Petitioner received a copy of the DHO Report on December 11, 2015, it again clearly advised him of his appeal rights and the 20-day deadline in which to appeal under the Administrative Remedy Procedure. Id., § VIII at 25; see also 28 C.F.R. § 542.14(d)(2); 28 C.F.R. § 542.15(a). Petitioner

marked an "x" in the box in the DHO report to indicate his acknowledgment that he had read the provision regarding his appeal rights. ECF No. 14-1 at 25, § VIII at 25. Twenty days from December 11, 2015 would have been December 31, 2015. However, although Petitioner's BP-10 is dated December 27, 2015, it was not considered filed until it was received by the Regional Director,[2] on January 13, 2016, thirty-two (32) days after Petitioner received the DHO Report and twelve (12) days after the deadline to appeal had already expired. ECF No. 14-1 at 32; see also Declaration of Howard Williams, Legal Assistant and Administrative Remedy Clerk, Mid-Atlantic Regional Office of the BOP ("Williams Decl."), ECF No. 14-1, ¶ 9, at 3.

> Timelines for filing BOP administrative grievances are set forth in 28 CFR 542.14:
>
> **(a)** Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is ***20 calendar days following the date on which the basis for the Request occurred***.
>
> **(b)** Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 CFR 542.14 (emphasis added). Here, because Petitioner's BP-10 form did not arrive at the BOP Regional Office within 20 calendar days from the date that a copy of the December 9, 2015 DHO Report was delivered to him on December 11, 2015, it was rejected as untimely by the BOP Regional Office when it was received on January 13, 2016 and Petitioner was advised that the BP-10 had to have been "received within 20 days of the Warden/CCM response or ***the receipt***

---

[2] Twenty Eight CFR 542.14(d)(2) governs DHO appeals, and directs that they "shall be submitted initially to the Regional Director for the region where the inmate is currently located."

*of the DHO report. This time includes mail time*." ECF No. 1-1 at 3 (emphasis added); Williams Decl., ECF No. 14-1, ¶ 9 at 3.

Instead of attempting to demonstrate a valid reason for his untimeliness by obtaining verification from FCC Coleman staff to explain why his BP was not timely mailed, and resubmitting the appeal to the Regional Office, on February 16, 2016, Petitioner appealed to the BOP Central Office, asserting that he had completed his BP-10 form on December 27, 2015, and handed it to institutional staff to mail the same day, before the twenty (20) day appeal deadline had expired. ECF No. 1-1 at 2; Williams Decl., ECF No. 14-1, ¶ 9 at 3.

On March 3, 2016, his Central Office Administrative Remedy appeal was also rejected, for three reasons: 1) Petitioner had submitted his appeal to Central Office instead of the Regional Office; 2) the Central Office concurred with the rationale of the Regional Office's earlier rejection for untimeliness, and directed Petitioner to follow the directions already provided in his previous rejection notice; and 3) Petitioner was advised that "[a] rejection is not a denial. You must have a *denial* prior to appealing to the next level. Follow directions and resubm[i]t appeal at the region level." ECF No. 1-1 at 1 (emphasis added); see also Williams Decl., ECF No. 14-1, ¶ 9 at 3.

Pursuant to 28 C.F.R. § 542.14(b), an inmate is entitled to submit a verification from staff members at his federal correctional facility describing any reason why an administrative remedy filing was delayed. Williams Decl., ECF No. 14-1, ¶ 9 at 3. However, here, despite specific direction from the BOP Central Office to resubmit his administrative remedy request to the Regional Office, Petitioner did not resubmit his appeal to the Regional Office, and did not submit any verification from staff at FCC Coleman to explain why his BP-10 administrative remedy request was not timely received by the Regional Office. Id.

In his response in opposition to the Respondent's dispositive motion, Petitioner contends that he could not obtain any statements from FCC Coleman staff to explain the delay in submitting his BP10 because by January 20, 2016, he was in transit to USP Hazelton. The fact that Petitioner was in transit as of that date, headed for USP Hazelton, is corroborated by the copy of his Inmate History Quarters, produced by the Respondent. See ECF No. 14-1 at 10. Nonetheless, it is also apparent from the record that the BP-10 was rejected on January 13, 2016, leaving Petitioner a full week from the time he received the BP-10 rejection *before* he was transferred away from FCC Coleman on January 20, 2016, to obtain verification from staff at FCC Coleman to explain why his administrative remedy request was not timely received.

The PLRA contains a procedural default concept within its exhaustion requirement. A prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted. Regardless of whether a prisoner goes through the formality of submitting a time-barred grievance, he may not successfully argue that he has exhausted his administrative remedies by, in essence, failing to employ them. Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004) (citations, quotations omitted) *overruled in part on other grounds by* Jones v. Bock, 549 U.S. 199, 223 - 24, (2007). "To exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim . . . [T]hese include time limits." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002).

It is a federal inmate's burden to prove that the BOP administrative remedy process was somehow rendered unavailable to him. Salazar v. Holder, No. 3:14-CV-23, 2015 WL 574800, at *5 (N.D. W.Va. Feb. 11, 2015). This burden of proof requires more than "naked assertions without any specificity or evidentiary support. Id. Here, Petitioner has not met his burden. As noted *supra,* a federal prisoner's administrative remedy is not exhausted where, as is the case here, the inmate

is expressly instructed to resubmit a deficient submission and he fails to do so. Tucker v. Helbig, 2013 U.S. Dist. LEXIS 170673 at *4.

Prisoners are required to exhaust their administrative remedies *prior to* the filing of their petitions, citing to McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (Federal prisoners must exhaust their administrative remedies prior to filing §2241 petitions.); United States v. Odiana, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing §2241); United States. v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing §2241). The requirement of exhaustion in § 2241 petitions is judicially imposed, and therefore courts retain discretion to waive the requirement when exhaustion is futile. See Larue v. Adams, No. 1:04-0396, 2006 WL 1674487 * 8 (S.D. W. Va. June 12, 2006), Reeder v. Phillips, No 1:07-cv-138, 2008 WL 2434003 *3, Keeley, J. (N.D. W.Va. June 12, 2008). However, unless the agency is certain to rule adversely, failure to exhaust is not excused. Reeder, 2008 WL 2434003 at * 3.

Accordingly, it is apparent from the record that Petitioner did not exhaust his administrative remedies regarding his disciplinary hearing report prior to filing in court. To the extent that exhaustion may be waived, Petitioner has failed to set forth any reason at all, let alone any accepted reason, to excuse his failure to exhaust. Because Petitioner is now well outside of the time limits for bringing his claims, attempting to finish exhausting now would be futile, thus his claims must be dismissed with prejudice.

However, even if Petitioner had fully exhausted his claims, they would be due to be dismissed anyway. As the Respondent correctly noted, a § 2241 petition is used to attack the manner in which a sentence is executed, and therefore, is the proper mechanism for a prisoner to challenge the legality of duration of his confinement. See Preiser v. Rodriguez, 411 U.S. 475, 484,

500 (1973) (emphasis added). Here, Petitioner's claims regarding his disciplinary report did not result in the loss of any GCT, thus, there is no challenge to the fact or length of his confinement. Moreover, it is apparent that Petitioner's Eighth amendment claim of excessive force and his claim of a due process rights violation caused by the allegedly falsified DHO report, both raised for the first time in his response in opposition to the Warden's dispositive motion, have never been exhausted. Nonetheless, even if they had been, they would have to be dismissed anyway, because they are civil rights claims which are not cognizable in a § 2241 habeas action; they are more properly raised in a civil rights action. See Preiser v. Rodriguez, *supra* at 498 – 99.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or Alternatively, Motion for Summary Judgment [ECF No. 13] be **GRANTED**, and the Petitioner's § 2241 petition be **DENIED** and **DISMISSED with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to provide a copy to all

counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: February 16, 2017

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE